# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: MOVEIT CUSTOMER DATA SECURITY BREACH LITIGATION | MDL No. 1:23-md-03083-ADB-PGL |
| This Document Relates To: | **DIRECT FILED COMPLAINT & JURY DEMAND PURSUANT TO MDL ORDER NO. 12** |
| GEORGE DEAN and LISA ADEWOLE, | |
| Plaintiffs, | CIVIL ACTION NO. |
| v. | |
| PROGRESS SOFTWARE CORPORATION and PHILIPS RS NORTH AMERICA, LLC, | |
| Defendants. | |

Plaintiffs George Dean and Lisa Adewole ("Plaintiffs") individually and on behalf of all others similarly situated, upon personal knowledge of facts pertaining to themselves and on information and belief as to all other matters, bring this Class Action Complaint against Defendants Progress Software Corporation ("PSC") and Philips RS North America, LLC ("Philips") (collectively with PSC, "Defendants"), and in support thereof allege as follows:

## NATURE OF ACTION

1.      This Complaint is being directly filed into this MDL proceeding pursuant to the Court's MDL Order No. 12.

2.      Plaintiffs incorporate the allegations contained in the Plaintiffs' Omnibus Set of Additional Pleading Facts (ECF No. 908) in its entirety.

3.     Plaintiffs bring this class action against Defendants for their failure to properly secure and safeguard Plaintiffs' and other similarly situated patients' Personally Identifiable Information ("PII") and Protected Health Information ("PHI") (collectively, "Private Information" or "PI"). According to the Federal Trade Commission ("FTC"), PII is "information that can be used to distinguish or trace an individual's identity, either alone or when combined with other information that is linked or linkable to a specific individual." PHI is deemed private under the Healthcare Insurance Portability and Accountability Act of 1996 ("HIPAA"), 42 U.S.C. §§ 1320d, *et seq.*, as well as multiple state statutes. According to the U.S. Department of Health & Human Services ("HHS"), PHI "is information, including demographic data," that relates to: "the individual's past, present or future physical or mental health or condition," "the provision of health care to the individual," or "the past, present, or future payment for the provision of health care to the individual," and that "identifies the individual or for which there is a reasonable basis to believe it can be used to identify the individual." Individually identifiable health information includes many common identifiers (e.g., name, address, birth date, SSN)."

4.     As used throughout this Complaint and previously defined in the paragraph above, "Private Information" is further defined as all information exposed by the  data breach ("Data Breach"), including all or any part or combination of name, address, birth date, SSN, PHI, driver's license information (including license number, state, home address, dates of issuance or expiration), telephone number, email address, tax identification number, credit card number, or dispute documents with PII (such as images of government-issued identifications).

## PARTIES

5.     Plaintiff George Dean is, and was at all relevant times, an individual and citizen of Rome, Georgia.

6.     Plaintiff Lisa Adewole is, and was at all relevant times, an individual and citizen of Austin, Texas.

7.     PSC is a Delaware corporation and maintains its headquarters and principal place of business at 15 Wayside Road, 4th Floor, Burlington, Massachusetts 01803. PSC offers the service MOVEit, which experienced the Data Breach underlying Plaintiffs' claims.

8.     Philips is a Delaware limited liability company headquartered at 6501 Living Place, Pittsburgh, Pennsylvania 15206. Philips formerly operated under the business name Respironics, Inc.  Philips acquired Respironics in 2008, creating "Philips Respironics." However, Philips Respironics is a fictious name and is owned it its entirety by Philips. Upon information and belief Philips is a single member limited liability company, with Philips RS North America Holding Corporation owning 100% of Philips. Philips RS North America Holding Corporation is a Delaware corporation headquartered at 222 Jacobs Street, Cambridge, Massachusetts 02141. Philips is a citizen of each state in which one of its members is a citizen. Philips is therefore a citizen of the State of Delaware and Commonwealth of Massachusetts.

## JURISDICTION

9.     This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332(a) and (d), because the matter in controversy, exclusive of interest and costs, exceeds the sum or value of five million dollars ($5,000,000) and is a class action in which one or more class members are citizens of states different from Defendants.

10.    Absent the Court's MDL Order No. 12 (Direct Filing Order), Plaintiffs would have otherwise filed the case in each district court noted below, with the following bases:

         a.     Plaintiff Dean would have filed his action in the United States District Court for the Western District of Pennsylvania. That court has general jurisdiction over Defendant Philips

because Philips' headquarters is located in that district. That court has general jurisdiction over Defendant PSC because PSC is an out-of-state corporation registered to do business under the laws of the Commonwealth of Pennsylvania since November 21, 2007. As part of registering to do business in the Commonwealth of Pennsylvania, PSC "shall enjoy the same rights and privileges as a domestic entity and shall be subject to the same liabilities, restrictions, duties and penalties . . . imposed on domestic entities." 15 Pa. C.S.A. § 402(d). Among other things, Pennsylvania law is explicit that "qualification as a foreign corporation under the laws of [the] Commonwealth" shall permit courts within Pennsylvania to "exercise general personal jurisdiction" over a registered foreign corporation just as they can over a domestic corporation. 53 Pa. C.S.A. § 5301(a)(2). Thus, by registering to do business in the Commonwealth of Pennsylvania and benefiting from the opportunity to do business in the Commonwealth Pennsylvania, PSC has consented to being subject to general jurisdiction in the Commonwealth of Pennsylvania. In the alternative, that court has specific jurisdiction over Defendant PSC because PSC purposefully availed itself of the privilege of conducting business with Philips in that district and Plaintiff Dean's claims arise from that business such that the exercise of jurisdiction would not offend traditional notions of fair play or substantial justice.  Venue would be proper in the Western District of Pennsylvania pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiff Dean's claims occurred in that district.

       b.    Plaintiff Adewole would have filed her action in the United States District Court for the Western District of Pennsylvania. That court has general jurisdiction over Defendant Philips because Philips' headquarters is located in that district. That court has general jurisdiction over Defendant PSC because PSC is an out-of-state corporation registered to do business under the laws of the Commonwealth of Pennsylvania since November 21, 2007. As part of registering

to do business in the Commonwealth of Pennsylvania, PSC  "shall enjoy the same rights and privileges as a domestic entity and shall be subject to the same liabilities, restrictions, duties and penalties . . . imposed on domestic entities." 15 Pa. C.S.A. § 402(d). Among other things, Pennsylvania law is explicit that "qualification as a foreign corporation under the laws of [the] Commonwealth" shall permit courts within Pennsylvania to "exercise general personal jurisdiction" over a registered foreign corporation just as they can over a domestic corporation. 53 Pa. C.S.A. § 5301(a)(2). Thus, by registering to do business in the Commonwealth of Pennsylvania and benefiting from the opportunity to do business in the Commonwealth Pennsylvania, PSC has consented to being subject to general jurisdiction in the Commonwealth of Pennsylvania. In the alternative, that court has specific jurisdiction over Defendant PSC because PSC purposefully availed itself of the privilege of conducting business with Philips in that district and Plaintiff Adewole's claims arise from that business such that the exercise of jurisdiction would not offend traditional notions of fair play or substantial justice. Venue would be proper in the Western District of Pennsylvania pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiff Adewole claims occurred in that district.

## FACTUAL ALLEGATIONS

**Nature of Philips' Businesses.**

11.    Philips is a medical device company that claims to provide "[i]nnovative, connected and patient-focused Sleep Therapy solutions."[1] Philips provides several classes of products, including sleep therapy systems, masks, sleep diagnostic systems, and software designed to help people breathe.[2] These products include Continuous Positive Airway Pressure ("CPAP") and

---

[1] *Sleep*, Philips, available at: https://www.usa.philips.com/healthcare/solutions/sleep (last accessed June 20, 2024).
[2] *Id.*

Bilevel Positive Airway Pressure ("BiPAP") machines, which are commonly used to treat sleep apnea, and mechanical ventilators ("ventilators"), which treat respiratory failure. The primary function of these devices is to blow air into patients' airways. CPAP and BiPAP machines are intended for use during sleep while ventilators are used continuously when needed.

12.     Philips has developed and maintains several programs designed to allow patients and providers to access their sleep device's data.[3] Specifically, Philips' sleep therapy devices such as its CPAP devices, which are used by patients with sleep apnea, collect various information that can be transmitted to clinicians to monitor the patient's progress and manage patient compliance and therapy. These programs include Care Orchestrator and EncoreAnywhere.

13.     EncoreAnywhere is a software that was originally designed as a service for home care providers.[4] EncoreAnywhere "tracks patient progress, collects and analyzes compliance and therapy data, and provides valuable reports about the data."[5] Users were also able to enter device settings and the settings could be transmitted to Philips therapy devices.[6]

14.     Care Orchestrator is a cloud-based clinical management software first launched in 2016.[7] It is designed to connect clinical workflow and informatics with data from the CPAP devices for the benefit of patients, providers, and payors.[8] It was launched as an update to

---

[3]     *Easy and efficient data access*, Philips Respironics, available at: https://www.usa.philips.com/healthcare/solutions/sleep/software (last accessed June 20, 2024).
[4]     *EncoreAnywhere Security (USA), Version 4*, Philips (June 1, 2016), available at: https://www.oit.va.gov/Services/TRM/files/EncoreAnyWhere_Security_PDF.pdf.
[5]     *Id*.
[6]     *Id*.
[7]     *Philips Care Orchestrator Cloud-based Clinical Management Software*, Sleep Review (March 15, 2024), available at: https://sleepreviewmag.com/sleep-diagnostics/connected-care/philips-care-orchestrator-cloud-based-clinical-management-software/.
[8]     *Id.*

EncoreAnywhere, a similar software which focused more on CPAP use and patient compliance, but has increased capabilities for providers and insurance and billing companies.

15.    As a condition of using these services to facilitate the transmission of sleep therapy information between patients and their clinicians, Philips requires its sleep therapy device users, including Plaintiffs and Class Members, to entrust it with their highly sensitive Information.

16.    Philips recognizes that it is responsible for ensuring the protection of the Private Information it is entrusted. In January 2023, Philips published a position paper indicating its "commit[ment] to proactively addressing our customers' security and privacy concerns."[9]

17.    In its position paper, Philips represents that "security is a priority for Philips" and further states that "Philips is committed to the deployment of a comprehensive security strategy that assures the safety of product, business (enterprise information) and personal (patient) data."[10]

18.    Philips' goes on to state in its position paper that it "takes the growing risk of cybersecurity threats to our products very seriously. We have long been committed to the ongoing effort to continually improve our processes and systems to minimize the risk to the patients who depend on our solutions and services."[11]

19.    Finally, in its position paper, Philips represents that it has "a longstanding commitment to respect the privacy of our customers, consumers, and other individuals we interact with such as patients[,]" informing individuals that it is "commit[ed] to handling all personal data with integrity in compliance with all applicable privacy regulations of countries in which we operate."[12]

---

[9] *Philips and cybersecurity*, Philips (Jan. 2023), available at: https://www.philips.com/c-dam/b2bhc/master/About-Us/customer-support/cyber-security-position-paper.pdf.
[10] *Id.* at 4.
[11] *Id.* at 6.
[12] *Id.* at 9.

20.     Philips further states that its commitment to data privacy is enshrined in its "Data

Principles:"

**Security**
We ensure the security of all data entrusted to us. We operate under global security policies that guide our activities to protect against vulnerabilities and manage any incidents.

\*\*\*

**Privacy**
We handle all personal data with integrity in compliance with all applicable privacy regulations of the countries in which we operate. We adhere to the Philips Code of Conduct – our binding corporate rules – that governs data transfers and processing within our company. When our business partners process personal data on our behalf, we ensure that they comply with our security and privacy requirements.

\*\*\*

**Beneficial**
We aim to create innovative solutions that benefit our customers, patients, and society as a whole. We use your personal data in line with your reasonable expectations.[13]

21.     Yet, contrary to Philips' data privacy and security representations – by virtue of

Philips' admissions that it experienced a Data Breach, which revealed the Private Information of

more than 450,000 individuals – Philips did not have adequate measures in place to protect and

maintain sensitive Private Information entrusted to it or to ensure its vendors and business

associates reasonably or adequately secured, safeguarded, and otherwise protected consumers'

Private Information that Philips shared with third-party vendors such as PSC through Philips' use

of MOVEit. Instead, Philips' privacy statements wholly fails to disclose the truth: that Philips lacks

sufficient processes to protect the Private Information that is entrusted to it.

---

[13] *Philips Data Principles*, Philips, available at https://www.philips.com/a-w/about/philips-data-principles.html (last accessed June 20, 2024).

**Philips and PSC Failed to Protect Plaintiffs' and Class Members' Private Information.**

22.    Defendants had a duty to adopt reasonable measures to protect the Private Information of Plaintiffs and Class Members from involuntary disclosure to third parties and to audit, monitor, and verify the integrity of their IT vendors' and affiliates' data security practices and systems. Defendants had a legal duty to keep Private Information safe and confidential.

23.    Defendants had obligations created by the Federal Trade Commission Act ("FTCA"), HIPAA, contract, industry standards, representations made to Plaintiffs and Class Members, and common law to keep their Private Information confidential and to protect it from unauthorized access and disclosure.

24.    Defendants derived a substantial economic benefit from collecting Plaintiffs' and Class Members' Private Information. Without the required submission of Private Information, Defendants could not perform the services they provide.

25.    By obtaining, collecting, using, and deriving a benefit from Plaintiffs' and Class Members' Private Information, Defendants assumed legal and equitable duties and knew or should have known that they were responsible for protecting Plaintiffs' and Class Members' Private Information from disclosure.

**Plaintiffs' Experiences with the Data Breach.**

*Plaintiff George Dean*

26.    Plaintiff Dean is a former user of a Philips CPAP device whose device was connected to Philips' Care Orchestrator. Specifically, Plaintiff Dean used a Philips CPAP device between approximately 2014 and 2021.

27.    In order for Plaintiff Dean to share his Private Information with his medical provider through Philips Care Orchestrator, Plaintiff Dean was required to provide his Private

Information to Philips, directly or indirectly, including his name, date of birth, address, email address, phone number, and other sensitive information.

28.    At the time of the Data Breach—approximately May 27, 2023, through May 31, 2023—Philips retained Plaintiff Dean's Private Information in its servers and shared it with its IT vendors.

29.    Plaintiff Dean is very careful about sharing his sensitive Private Information. He stores any documents containing his Private Information in a safe and secure location and has never knowingly transmitted unencrypted sensitive Private Information over the internet or any other unsecured source. Plaintiff Dean would not have entrusted his Private Information to Philips had he known of Philips' lax data security policies.

30.    Plaintiff Dean received a Notice Letter dated February 26, 2024 by U.S. mail, directly from Philips, which is attached hereto as Exhibit 1.  According to the Notice Letter, Plaintiff Dean's Private Information – including his name, date of birth, address, email address, and phone number, insurance policy number, patient ID, facility ID, device setup date, device serial number, and modem serial number – may have been improperly accessed and obtained by unauthorized third parties.

31.    As a result of the Data Breach, and at the direction of Philips' Notice Letter, Plaintiff Dean made reasonable efforts to mitigate the impact of the Data Breach, including researching and verifying the legitimacy of the Data Breach, spending time resetting the passwords to his accounts, and monitoring his accounts for suspicious activity. Plaintiff Dean spent significant time dealing with the Data Breach – valuable time Plaintiff Dean otherwise would have spent on other activities, including but not limited to work and/or recreation. All told, Plaintiff Dean estimates

that he spent over 20 hours to date responding to the Data Breach. This time has been lost forever and cannot be recaptured.

33.    Plaintiff Dean also experienced a large uptick in fraudulent spam and phishing calls and emails since the Data Breach.

33.    The Data Breach caused Plaintiff Dean to suffer fear, anxiety, and stress, which has been compounded by the fact that Philips has still not fully informed him of key details about the Data Breach's occurrence.

34.    As a result of the Data Breach, Plaintiff Dean anticipates spending considerable time on an ongoing basis to try to mitigate and address harms caused by the Data Breach. Plaintiff Dean is presently at risk and will continue to be at increased risk of identity theft and fraud for years to come.

### Plaintiff Lisa Adewole

35.    Plaintiff Adewole is a former user of a Philips CPAP device whose device was connected to Philips' Care Orchestrator. Specifically, Plaintiff Adewole used a Philips CPAP device between approximately 2017 and 2023.

36.    In order for Plaintiff Adewole to share her Private Information with her medical provider through Philips Care Orchestrator, Plaintiff Adewole was required to provide her Private Information to Philips, directly or indirectly, including her name, date of birth, address, email address, phone number, and other sensitive information.

37.    At the time of the Data Breach—approximately May 27, 2023, through May 31, 2023—Philips retained Plaintiff Adewole's Private Information in its servers and shared it with its IT vendors.

38.     Plaintiff Adewole is very careful about sharing her sensitive Private Information. She stores any documents containing her Private Information in a safe and secure location and has never knowingly transmitted unencrypted sensitive Private Information over the internet or any other unsecured source. Plaintiff Adewole would not have entrusted her Private Information to Philips had she known of Philips' lax data security policies.

39.     Plaintiff Adewole received a Notice Letter dated February 26, 2024 by U.S. mail, directly from Philips, which is attached hereto as Exhibit 2.  According to the Notice Letter, Plaintiff Adewole's Private Information – including her name, date of birth, address, email address, and phone number, insurance policy number, patient ID, facility ID, device setup date, device serial number, and modem serial number – may have been improperly accessed and obtained by unauthorized third parties.

40.     As a result of the Data Breach, and at the direction of Philips' Notice Letter, Plaintiff Adewole made reasonable efforts to mitigate the impact of the Data Breach, including researching and verifying the legitimacy of the Data Breach, spending monitoring her accounts for suspicious activity, and contacting Experian about the Data Breach. Plaintiff Adewole spent significant time dealing with the Data Breach – valuable time Plaintiff Adewole otherwise would have spent on other activities, including but not limited to work and/or recreation. This time has been lost forever and cannot be recaptured.

41.     As a result of the Data Breach, Plaintiff Adewole purchased and paid for two months of credit monitoring services at $27.05 per month in order to prevent misuse of her Private Information. Plaintiff Adewole also experienced a large uptick in fraudulent spam and phishing calls and emails since the Data Breach.

42.    The Data Breach caused Plaintiff Adewole to suffer fear, anxiety, and stress, which has been compounded by the fact that Philips has still not fully informed her of key details about the Data Breach's occurrence.

43.    As a result of the Data Breach, Plaintiff Adewole anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach. Plaintiff Adewole is presently at risk and will continue to be at increased risk of identity theft and fraud for years to come.

## CLASS ACTION ALLEGATIONS

44.    Plaintiffs bring this action on behalf of themselves and on behalf of the following Class: "All residents of the United States whose Private Information was compromised as a result of the Data Breach" (the "Nationwide Class").

45.    Plaintiffs also bring this action on behalf of themselves and on behalf of the following subclass: "All residents of the United States whose Private Information was maintained by Philips when it was compromised as a result of the Data Breach" (the "Philips Subclass").

46.    The foregoing classes are referred to herein, collectively, as the "Class." Excluded from the Class are: (1) the judges presiding over the action; (2) the Defendants, their subsidiaries, parent companies, successors, predecessors, and any entity in which Defendants or their parents have a controlling interest, and their current or former officers and directors; (3) persons who properly opt out; and (4) the successors or assigns of any such excluded persons.

47.    **Numerosity**: Class Members are so numerous that their individual joinder is impracticable, as the proposed Class includes at least 450,000 members who are geographically dispersed.

48.    **Typicality**: Plaintiffs' claims are typical of Class Members' claims. Plaintiffs and all Class Members were injured through Defendants' uniform misconduct, and Plaintiffs' claims are identical to the claims of the Class Members they seek to represent.

49.    **Adequacy**: Plaintiffs' interests are aligned with the Class they seek to represent, and Plaintiffs have retained counsel with significant experience prosecuting complex class action cases, including cases involving alleged privacy and data security violations. Plaintiffs and their counsel intend to prosecute this action vigorously. The Class's interests are well-represented by Plaintiffs and undersigned counsel.

50.    **Superiority**: A class action is the superior – and only realistic – mechanism to fairly and efficiently adjudicate Plaintiffs' and other Class Members' claims. The injury suffered by each individual Class Member is relatively small in comparison to the burden and expense of individual prosecution of complex and expensive litigation. It would be very difficult, if not impossible, for Class Members individually to effectively redress Defendants' wrongdoing. Even if Class Members could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the court system, because of the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

51.    **Commonality and Predominance:** The following questions common to all Class Members predominate over any potential questions affecting individual Class Members:

a.  Whether Defendants had a duty to implement and maintain reasonable security procedures and practices to protect and secure Plaintiffs' and Class Members' Private Information from unauthorized access and disclosure;

b.  Whether Defendants failed to exercise reasonable care to secure and safeguard Plaintiffs' and Class Members' Private Information;

c.  Whether Defendants breached their duties to protect Plaintiffs' and Class Members' Private Information;

d.  Whether Defendants violated the statutes alleged herein;

e.  Whether Plaintiffs and all other Class Members are entitled to damages and the measure of such damages and relief.

52.  Given that Defendants engaged in a common course of conduct as to Plaintiffs and the Class, similar or identical injuries and common law violations are involved, and common questions outweigh any potential individual questions.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

### NEGLIGENCE

**(Brought on Behalf of the Nationwide Class against PSC and on Behalf of the Philips Subclass Against Philips)**

53.  Plaintiffs reallege and incorporate by reference preceding paragraphs 1 through 50 as if fully set forth herein, including the Plaintiffs' Omnibus Set of Additional Pleading Facts (ECF No. 908).

54.  Defendants knowingly collected, acquired, stored, and/or maintained Plaintiffs' and Class Members' Private Information, and had a duty to exercise reasonable care in safeguarding,

securing, and protecting the Private Information from being disclosed, compromised, lost, stolen, and misused by unauthorized parties.

55.     The duty included obligations to take reasonable steps to prevent disclosure of the Private Information, and to safeguard the information from theft. Defendants' duties included the responsibility to design, implement, and monitor data security systems, policies, and processes to protect against reasonably foreseeable data breaches such as this Data Breach.

56.     Defendants owed a duty of care to Plaintiffs and Class Members to provide data security consistent with industry standards and other requirements discussed herein, and to ensure that their systems and networks, policies, and procedures, and the personnel responsible for them, adequately protected the Private Information.

57.     These duties owed by Defendants included the obligation to properly review, assess, and manage the cybersecurity risk posed by third-party vendors and service providers.

58.     Defendants owed a duty of care to safeguard the Private Information due to the foreseeable risk of a data breach and the severe consequences that would result from their failure to so safeguard the Private Information.

59.     Defendants' duty of care to use reasonable security measures arose as a result of the special relationship that existed between Defendants and those individuals who entrusted them with their Private Information, which is recognized by laws and regulations as well as common law. Defendants were in a position to ensure that their systems were sufficient to protect against the foreseeable risk of harm to Class Members from a data breach.

60.     In addition, Defendants had a duty to employ reasonable security measures under Section 5 of the FTCA, 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting

commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.

61.     Under HIPAA, Defendants had a duty to use reasonable security measures to "reasonably protect" confidential data from "any intentional or unintentional use or disclosure" and to "have in place appropriate administrative, technical, and physical safeguards to protect the privacy of protected health information." 45 C.F.R. § 164.530(c)(1). Some or all of the medical information at issue in this case constitutes "protected health information" within the meaning of HIPAA. *Id.*

62.     Moreover, under HIPAA, Defendants had a duty to render the electronic Private Information that they maintained as unusable, unreadable, or indecipherable to unauthorized individuals. Specifically, the HIPAA Security Rule requires "the use of an algorithmic process to transform data into a form in which there is a low probability of assigning meaning without use of a confidential process or key." 45 C.F.R. § 164.304 (defining encryption).

63.     Plaintiffs and Class Members are within the class of persons that the HIPAA was intended to protect. And the injuries that Defendants inflicted on Plaintiffs and Class Members are precisely the harms that HIPAA guards against. After all, the Federal Health and Human Services' Office for Civil Rights ("OCR") has pursued enforcement actions against businesses which— because of their failure to employ reasonable data security measures—caused the very same injuries that Defendants inflicted upon Plaintiffs and Class Members.

64.     Under § 17932 of the Health Information Technology for Economic and Clinical Health Act ("HITECH"), Defendants have a duty to promptly notify "without unreasonable delay and in no case later than 60 calendar days after the discovery of a breach" the respective covered

entities and affected persons so that the entities and persons can take action to protect themselves. 42 U.S.C.A. § 17932(d)(1).

65.     Moreover, § 17932(a) of HITECH states that, "[a] covered entity that accesses, maintains, retains, modifies, records, stores, destroys, or otherwise holds, uses, or discloses unsecured protected health information (as defined in subsection (h)(1)) shall, in the case of a breach of such information that is discovered by the covered entity, notify each individual whose unsecured protected health information has been, or is reasonably believed by the covered entity to have been, accessed, acquired, or disclosed as a result of such breach."

66.     And § 17932(b) of HITECH states that, "[a] business associate of a covered entity that accesses, maintains, retains, modifies, records, stores, destroys, or otherwise holds, uses, or discloses unsecured protected health information shall, following the discovery of a breach of such information, notify the covered entity of such breach. Such notice shall include the identification of each individual whose unsecured protected health information has been or is reasonably believed by the business associate to have been, accessed, acquired, or disclosed during such breach."

67.     Under the FTCA, Defendants had a duty to employ reasonable security measures. Specifically, this statute prohibits "unfair . . . practices in or affecting commerce," including (as interpreted and enforced by the FTC) the unfair practice of failing to use reasonable measures to protect confidential data. 15 U.S.C. § 45.

68.     Moreover, Plaintiffs and Class Members' injuries are precisely the type of injuries that the FTCA guards against. After all, the FTC has pursued numerous enforcement actions against businesses that—because of their failure to employ reasonable data security measures and

avoid unfair and deceptive practices—caused the very same injuries that Defendants inflicted upon Plaintiffs and Class Members.

69.     Defendants' duty to use reasonable care in protecting Private Information arose not only as a result of the statutes and regulations described above, but also because Defendants are bound by industry standards to protect Private Information that they acquire, maintain, or store.

70.     Defendants owed Plaintiffs and Class Members a duty to notify them within a reasonable time frame of any breach to their Private Information. Defendants also owed a duty to timely and accurately disclose to Plaintiffs and Class Members the scope, nature, and occurrence of the Data Breach. This duty is necessary for Plaintiffs and Class Members to take appropriate measures to protect their Private Information, to be vigilant in the face of an increased risk of harm, and to take other necessary steps in an effort to mitigate the fallout of the Data Breach.

71.     Defendants owed these duties to Plaintiffs and Class Members because they are members of a well-defined, foreseeable, and probable class of individuals whom Defendants knew or should have known would suffer injury-in-fact from its inadequate security protocols. After all, Defendants actively sought and obtained the Private Information of Plaintiffs and Class Members.

72.     Defendants breached their duties, and thus were negligent, by failing to use reasonable measures to protect Plaintiffs' and Class Members' Private Information. And but for Defendants' negligence, Plaintiffs and Class Members would not have been injured. The specific negligent acts and omissions committed by Defendants include, but are not limited to:

       a.     Failing to adopt, implement, and maintain adequate security measures to safeguard Class Members' Private Information;

       b.     Failing to comply with – and thus violating – HIPAA and its regulations;

       c.     Failing to comply with – and thus violating – HITECH and its regulations;

d.      Failing to comply with – and thus violating – FTCA and its regulations;

e.      Failing to adequately monitor the security of their networks and systems;

f.      Failing to have in place mitigation policies and procedures;

g.      Allowing unauthorized access to Class Members' Private Information;

h.      Failing to detect in a timely manner that Class Members' Private Information had been compromised; and

i.      Failing to timely notify Class Members about the Data Breach so that they could take appropriate steps to mitigate the potential for identity theft and other damages.

73.     Defendants breached their duties, and thus were negligent, by failing to use reasonable measures to protect Plaintiffs' and Class Members' Private Information, as alleged and discussed above.

74.     It was foreseeable that Defendants' failure to use reasonable measures to protect Class Members' Private Information would result in injury to Plaintiffs and Class Members.

75.     Further, the breach of security was reasonably foreseeable given the known high frequency of cyberattacks and data breaches in the data transfer and storage industry.

76.     It was therefore foreseeable that the failure to adequately safeguard Class Members' Private Information would result in one or more types of injuries to Class Members.

77.     The imposition of a duty of care on Defendants to safeguard the Private Information they maintained is appropriate because any social utility of Defendants' conduct is outweighed by the injuries suffered by Plaintiffs and Class Members as a result of the Data Breach.

78.     As a direct and proximate result of Defendants' negligence, Plaintiffs and Class Members are at a current and ongoing risk of identity theft, and Plaintiffs and Class Members

sustained damages including: (i) invasion of privacy; (ii) financial "out-of-pocket" costs incurred mitigating the materialized risk and imminent threat of identity theft; (iii) loss of time and loss of productivity incurred mitigating the materialized risk and imminent threat of identity theft risk; (iv) financial "out-of-pocket" costs incurred due to actual identity theft; (v) loss of time incurred due to actual identity theft; (vi) loss of time due to increased spam and targeted marketing emails; (vii) lost value of their Private Information; (viii) future costs of identity theft monitoring; (ix) anxiety, annoyance and nuisance, and (x) the continued risk to their Private Information, which remains in Defendants' control, and which is subject to further breaches, so long as Defendants fail to undertake appropriate and adequate measures to protect Plaintiffs' and Class Members' Private Information.

79.     Plaintiffs and Class Members are entitled to compensatory and consequential damages suffered as a result of the Data Breach.

80.     Defendants' negligent conduct is ongoing, in that they still hold the Private Information of Plaintiffs and Class Members in an unsafe and unsecure manner.

81.     Plaintiffs and Class Members are also entitled to injunctive relief requiring Defendants to (i) strengthen their data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) continue to provide adequate credit monitoring to all Class Members.

## SECOND CAUSE OF ACION

### BREACH OF IMPLIED CONTRACT

**(Brought on Behalf of the Philips Subclass Against Philips)**

82. Plaintiffs reallege and incorporate by reference preceding paragraphs 1 through 50 as if fully set forth herein, including the Plaintiffs' Omnibus Set of Additional Pleading Facts (ECF No. 908).

83. Philips solicited, offered, and invited Plaintiffs and Class Members to provide their Private Information as part of Philips regular business practices, including the use of Philips' devices and its Care Orchestrator platform.

84. Plaintiffs and Class Members were required to, and did, provide their Private Information to Philips in exchange for the use of Philips' devices and its Care Orchestrator platform.

85. The mutual understanding and intent of Plaintiffs and Class Members on one hand, and Philips on the other, is demonstrated by their conduct and course of dealing. Philips required Plaintiffs and Class Members to provide their Private Information as a condition of using Philips' devices and its Care Orchestrator platform. Plaintiffs and Class Members accepted this offer for services and complied.

86. Philips relied on for its business, and conferred direct and indirect monetary benefits from, the Private Information provided by Plaintiffs and Class Members and thus from Plaintiffs and Class Members themselves, and had full knowledge of the benefits they conferred.

87. In providing their Private Information to Philips in exchange for the use of Philips' devices and its Care Orchestrator platform, and Philips accepting that Private Information, directly or indirectly, Plaintiffs and Class Members conferred a direct benefit on Philips, and entered into implied contracts with Philips by which Philips agreed to keep such information secure and confidential, ensure protection of their Private Information from unauthorized access or disclosure,

and to timely and adequately notify Plaintiffs and Class Members if their data had been breached and compromised or stolen.

88.    Such contracts were made expressly for the benefit of Plaintiffs and the Class Members, as it was their Private Information that Philips agreed to receive, store, utilize, transfer, and protect through its services. Thus, the benefit of collection and protection of the Private Information belonging to Plaintiffs and the Class were the direct and primary objective of the contracting parties and Plaintiffs and Class Members were direct and express beneficiaries of such contracts.

89.    In entering into these implied contracts, Plaintiffs and Class members reasonably believed and expected that Philips' data security practices complied with relevant laws and regulations and were consistent with industry standards, and they Philips would thoroughly vet and select vendors that adequately protect Private Information.

90.    Plaintiffs and Class Members would not have entrusted their Private Information to Philips in the absence of implied contracts between them and that Philips would keep, and require the third-party vendors its selects to store, tranter to use their Private Information in fair, secure, reasonable, and legally complaint ways.

91.    Implicit in these agreements between Plaintiffs and Class Members and Philips was Philips' obligations to: (i) take reasonable steps to safeguard Plaintiffs' and Class Members' Private Information, including through proper vetting of third party vendors to whom that Private Information is provided; (ii) prevent unauthorized disclosure of their Private Information; (c) provide Plaintiffs and Class Members with prompt and sufficient notice of any and all unauthorized access and/or theft of their Private Information; (d) reasonably safeguard and protect the Private Information of Plaintiffs and Class Members from unauthorized disclosure or uses; and (e) retain

or allow third parties to retain Private Information only under conditions that kept such information secure and confidential.

92.    Philips knew or should have known that if it were to breach these contracts, Plaintiffs and Class Members would be harmed.

93.    Philips breached its contracts by, among other things, failing to adequately secure Plaintiffs' and Class Members' Private Information; entrusting the Private Information to a vendor that fails to safeguard Private Information; and failing to provide timely notice to Plaintiffs and Class Members that their Private Information was compromised as a result of the Data Breach so that they could take prompt and adequate precautions to mitigate the risks caused by the Data Breach.

94.    Plaintiffs and Class Members therefore did not receive the benefit of their bargains because they provided their Private Information to Philips in exchange for an implied agreement by Philips to keep it safe and secure within its computer systems and network environment.

95.    Philips' conduct and lax security unfairly interfered with Plaintiffs' and Class Members' rights to receive the full benefit of their contracts.

96.    As a direct and proximate result of Philips' breach, Plaintiffs and Class Members are at a current and ongoing substantial risk of fraud and identity theft, and Plaintiffs and Class Members sustained incidental and consequential damages including: (i) financial "out-of-pocket" costs incurred mitigating the materialized risk and imminent threat of identity theft; (ii) loss of time and loss of productivity incurred mitigating the materialized risk and imminent threat of identity theft risk; (iii) financial "out-of-pocket" costs incurred due to actual identity theft; (iv) loss of time incurred due to actual identity theft; (v) loss of time due to increased spam and targeted marketing emails; (vi) lost value of their Private Information; (vii) future costs of identity theft

monitoring; (viii) loss benefit of the bargain and overpaying or Philips' services; and (ix) the continued risk to their Private Information, which remains in Philips' control, and which is subject to further breaches, so long as Philips fails to undertake appropriate and adequate measures to protect Plaintiffs' and Class Members' Private Information.

97.     As a direct and proximate result of Philips' breach, Plaintiffs and Class Members are entitled to compensatory, consequential, and nominal damages suffered as a result of the Data Breach.

98.     Plaintiffs and Class Members are also entitled to injunctive relief requiring Philips to, e.g., (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) immediately provide adequate ID protection and credit monitoring to all Class Members.

### THIRD CAUSE OF ACTION

### BREACH OF THIRD-PARTY BENEFICIARY CONTRACT

### (On Behalf of the Nationwide Class Against PSC)

99.     Plaintiffs reallege and incorporate by reference preceding paragraphs 1 through 50 as if fully set forth herein, including the Plaintiffs' Omnibus Set of Additional Pleading Facts (ECF No. 908).

100.    Upon information and belief, PSC entered into contracts with its government and/or corporate customers to provide secure file transfer services that included data security practices, procedures, designs, and protocols sufficient to safeguard the Private Information that was entrusted to it.

101.    Such contracts were made expressly for the benefit of Plaintiffs and the Class, as it was their Private Information that PSC agreed to receive, store, utilize, transfer, and protect

through its services. Thus, the benefit of collection and protection of the Private Information belonging to Plaintiffs and the Class was the direct and primary objective of the contracting parties and Plaintiffs and Class Members were direct and express beneficiaries of such contracts.

102.    PSC knew or should have known that if it were to breach these contracts with its customers, Plaintiffs and Class Members would be harmed.

103.    PSC breached its contracts with customers by, among other things, failing to adequately secure Plaintiffs' and Class Members' Private Information, and, as a result, Plaintiffs and Class Members were harmed by PSC's failure to secure their Private Information.

104.    As a direct and proximate result of Defendant's breach, Plaintiffs and Class Members are at a current and ongoing risk of identity theft, and Plaintiffs and Class Members sustained incidental and consequential damages including: (i) financial "out-of-pocket" costs incurred mitigating the materialized risk and imminent threat of identity theft; (ii) loss of time and loss of productivity incurred mitigating the materialized risk and imminent threat of identity theft risk; (iii) financial "out-of-pocket" costs incurred due to actual identity theft; (iv) loss of time incurred due to actual identity theft; (v) loss of time due to increased spam and targeted marketing emails; (vi) lost value of their Private Information; (vii) future costs of identity theft monitoring; and (viii) the continued risk to their Private Information, which remains in PSC's control, and which is subject to further breaches, so long as PSC fails to undertake appropriate and adequate measures to protect Plaintiffs' and Class Members' Private Information.

105.    Plaintiffs and Class Members are entitled to compensatory, consequential, and nominal damages suffered as a result of the Data Breach.

106.    Plaintiffs and Class Members are also entitled to injunctive relief requiring PSC to, e.g., (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual

audits of those systems and monitoring procedures; and (iii) immediately provide adequate ID protection and credit monitoring to all Class Members.

## FOURTH CAUSE OF ACTION

### UNJUST ENRICHMENT

**(Brought on Behalf of the Nationwide Class against PSC and on Behalf of the Philips Subclass Against Philips)**

107.    Plaintiffs reallege and incorporate by reference preceding paragraphs 1 through 50 as if fully set forth herein, including the Plaintiffs' Omnibus Set of Additional Pleading Facts (ECF No. 908).

108.    Plaintiffs and Class Members conferred a monetary benefit on Defendants by providing Defendants with their valuable Private Information.

109.    Defendants enriched themselves by saving the costs they reasonably should have expended on data security measures to secure Plaintiffs' and Class Members' Private Information, which cost savings increased the profitability of the services.

110.    Upon information and belief, instead of providing a reasonable level of security that would have prevented the Data Breach, Defendants instead calculated to avoid their data security obligations at the expense of Plaintiffs and Class Members by utilizing cheaper, ineffective security measures. Plaintiffs and Class Members, on the other hand, suffered as a direct and proximate result of Defendants' failure to provide the requisite security.

111.    Under the principles of equity and good conscience, Defendants should not be permitted to retain the monetary value of the benefit belonging to Plaintiffs and Class Members, because Defendants failed to implement appropriate data management and security measures that are mandated by industry standards.

112.    Defendants acquired the monetary benefit and Private Information, through inequitable means in that they failed to disclose the inadequate security practices previously alleged.

113.    Had Plaintiffs and Class Members known that Defendants had not secured their Private Information, they would not have agreed to provide their Private Information to Defendants. Plaintiffs and Class Members have no adequate remedy at law.

114.    As a direct and proximate result of Defendants' conduct, Plaintiffs and Class Members have suffered and will continue to suffer other forms of injury and/or harm.

115.    Furthermore, as a direct and proximate result of Defendants' unreasonable and inadequate data security practices, Plaintiffs and Class Members are at a current and ongoing risk of identity theft and have sustained incidental and consequential damages, including: (i) financial "out-of-pocket" costs incurred mitigating the materialized risk and imminent threat of identity theft; (ii) loss of time and loss of productivity incurred mitigating the materialized risk and imminent threat of identity theft risk; (iii) financial "out-of-pocket" costs incurred due to actual identity theft; (iv) loss of time incurred due to actual identity theft; (v) loss of time due to increased spam and targeted marketing emails; (vi) lost value of their Private Information; (vii) future costs of identity theft monitoring; and (viii) the continued risk to their Private Information, which remains in Defendants' control, and which is subject to further breaches, so long as Defendants fail to undertake appropriate and adequate measures to protect Plaintiffs' and Class Members' Private Information.

116.    Plaintiffs and Class Members are entitled to compensatory, consequential, and nominal damages suffered as a result of the Data Breach.

117.    Plaintiffs and Class Members are also entitled to injunctive relief requiring Defendants to, e.g., (i) strengthen their data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) immediately provide adequate ID theft and credit monitoring to all Class Members.

118.    Moreover, Defendants should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiffs and Class Members, proceeds that they unjustly received from them. In the alternative, Defendants should be compelled to refund the amounts that Plaintiffs and Class Members overpaid for Defendants' services.

## FIFTH CAUSE OF ACTION

### DECLARATORY AND INJUNCTIVE RELIEF

**(Brought on Behalf of the Nationwide Class against PSC and on Behalf of the Philips Subclass Against Philips)**

119.    Plaintiffs reallege and incorporate by reference preceding paragraphs 1 through 50 as if fully set forth herein, including the Plaintiffs' Omnibus Set of Additional Pleading Facts (ECF No. 908).

120.    Plaintiffs pursue this claim under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201.

121.    Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq*., this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and granting further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as here, that are tortious and violate the terms of the federal statutes described in this Complaint.

122.    An actual controversy has arisen in the wake of the Data Breach regarding Defendants' present and prospective common law and other duties to reasonably safeguard

Plaintiffs' and Class Members' Private Information, and whether Defendants are currently maintaining data security measures adequate to protect Plaintiffs and Class Members from future data breaches that compromise their Private Information. Plaintiffs and the Class remain at imminent risk that further compromises of their Private Information will occur in the future.

123.    The Court should also issue prospective injunctive relief requiring Defendants to employ adequate security practices consistent with law and industry standards to protect Plaintiffs' and Class Members' Private Information.

124.    Defendants still control the Private Information of Plaintiffs and the Class Members.

125.    To Plaintiffs' knowledge, Defendants have made no announcement that they have changed their data or security practices relating to the Private Information.

126.    To Plaintiffs' knowledge, Defendants have made no announcement or notification that they have remedied the vulnerabilities and negligent data security practices that led to the Data Breach.

127.    If an injunction is not issued, Plaintiffs and the Class will suffer irreparable injury and lack an adequate legal remedy in the event of another data breach. The risk of another such breach is real, immediate, and substantial.

128.    As described above, actual harm has arisen in the wake of the Data Breach regarding Defendants' contractual obligations and duties of care to provide security measures to Plaintiffs and Class Members. Further, Plaintiffs and Class Members are at risk of additional or further harm due to the exposure of their Private Information and Defendants' failure to address the security failings that led to such exposure.

129.    There is no reason to believe that Defendants' employee training and security measures are any more adequate now than they were before the Data Breach to meet Defendants' contractual obligations and legal duties.

130.    The hardship to Plaintiffs and Class Members if an injunction is not issued exceeds the hardship to Defendants if an injunction is issued. Among other things, if another data breach occurs, Plaintiffs and Class Members will likely continue to be subjected to fraud, identify theft, and other harms described herein. On the other hand, the cost to Defendants of complying with an injunction by employing reasonable prospective data security measures is relatively minimal, and Defendants have a pre-existing legal obligation to employ such measures.

131.    Issuance of the requested injunction will not disserve the public interest. To the contrary, such an injunction would benefit the public by preventing another data breach, thus eliminating the additional injuries that would result to Plaintiffs and the Class.

132.    Plaintiffs and Class Members seek a declaration (i) that Defendants' existing data security measures do not comply with their contractual obligations and duties of care to provide adequate data security; and (ii) that to comply with their contractual obligations and duties of care Defendants must implement and maintain reasonable security measures, including, but not limited to, the following:

      a.    engage internal security personnel to conduct testing, including audits on Defendants' systems, on a periodic basis, and promptly correct any problems or issues detected by such third-party security auditors;

      b.    engage third-party security auditors and internal personnel to run automated security monitoring;

c.    audit, test, and train their security personnel and employees regarding any new or modified data security policies and procedures;

d.    purge, delete, and destroy, in a reasonably secure manner, any Private Information not necessary for their provision of services;

e.    conduct regular database scanning and security checks; and

f.    routinely and continually conduct internal training and education to inform internal security personnel and employees how to safely share and maintain highly sensitive personal information, including but not limited to, Private Information.

**SIXTH CAUSE OF ACTION**

**INVASION OF PRIVACY-- INTRUSION UPON SECLUSION**

**(Brought on Behalf of the Nationwide Class against PSC and on Behalf of the Philips Subclass Against Philips)**

133.    Plaintiffs reallege and incorporate by reference preceding paragraphs 1 through 50 as if fully set forth herein, including the Plaintiffs' Omnibus Set of Additional Pleading Facts (ECF No. 908).

134.    Plaintiffs and Class Members had a reasonable expectation of privacy in the Private Information that Defendants failed to safeguard and allowed to be accessed by way of the Data Breach.

135.    Defendants' conduct as alleged above intruded upon Plaintiffs' and Class Members' seclusion under common law.

136.    By intentionally and/or knowingly failing to keep Plaintiffs' and Class Members' Private Information safe, and by intentionally misusing and/or disclosing said information to

unauthorized parties for unauthorized use, Defendants intentionally invaded Plaintiffs' and Class Members' privacy by:

> a.   Intentionally and substantially intruding into Plaintiffs' and Class Members' private affairs in a manner that identifies Plaintiffs and Class Members and that would be highly offensive and objectionable to an ordinary person;
>
> b.   Intentionally publicizing private facts about Plaintiffs and Class Members, which is highly offensive and objectionable to an ordinary person; and
>
> c.   Intentionally causing anguish or suffering to Plaintiffs and Class Members.

137.    Defendants knew that an ordinary person in Plaintiffs' and Class Members' position would consider Defendants' intentional actions highly offensive and objectionable.

138.    Defendants invaded Plaintiffs and Class Members' right to privacy and intruded into Plaintiffs' and Class Members' seclusion by intentionally failing to safeguard, misusing, and/or disclosing their Private Information without their informed, voluntary, affirmative, and clear consent.

139.    Defendants intentionally concealed from Plaintiffs and Class Members an incident that misused and/or disclosed their Private Information without their informed, voluntary, affirmative, and clear consent.

140.    As a proximate result of such intentional misuse and disclosures, Plaintiffs' and Class Members' reasonable expectations of privacy in their Private Information were unduly frustrated and thwarted.

141.    Defendants' conduct amounted to a substantial and serious invasion of Plaintiffs' and Class Members' protected privacy interests, causing anguish and suffering such that an

ordinary person would consider Defendants' intentional actions or inaction highly offensive and objectionable.

142.    In failing to protect Plaintiffs' and Class Members' Private Information, and in intentionally misusing and/or disclosing their Private Information, Defendants acted with intentional malice and oppression and in conscious disregard of Plaintiffs' and Class Members' rights to have such information kept confidential and private.

143.    As a direct and proximate result of the foregoing conduct, Plaintiffs seek an award of damages on behalf of themselves and the Class.

### SEVENTH CAUSE OF ACTION

### INVASION OF PRIVACY—PUBLIC DISCLOSURE OF PRIVATE FACTS

**(Brought on Behalf of the Nationwide Class against PSC and on Behalf of the Philips Subclass Against Philips)**

144.    Plaintiffs reallege and incorporate by reference preceding paragraphs 1 through 50 as if fully set forth herein, including the Plaintiffs' Omnibus Set of Additional Pleading Facts (ECF No. 908).

145.    Plaintiffs and Class Members had a reasonable expectation of privacy in the Private Information Defendants mishandled.

146.    As a result of Defendants' conduct, publicity was given to Plaintiffs' and Class Members' Private Information, which necessarily includes matters concerning their private life such as PII and PHI.

147.    A reasonable person of ordinary sensibilities would consider the publication of Plaintiffs' and Class Members' Private Information to be highly offensive.

148.    Plaintiffs' and Class Members' Private Information is not of legitimate public concern and should remain private.

149.    As a direct and proximate result of Defendants' public disclosure of private facts, Plaintiffs and Class Members are at a current and ongoing risk of identity theft and sustained compensatory damages including: (a) invasion of privacy; (b) financial "out of pocket" costs incurred mitigating the materialized risk and imminent threat of identity theft; (c) loss of time and loss of productivity incurred mitigating the materialized risk and imminent threat of identity theft; (d) financial "out of pocket" costs incurred due to actual identity theft; (e) loss of time incurred due to actual identity theft; (f) loss of time due to increased spam and targeted marketing emails; (g) lost value of their Private Information; (h) future costs of identity theft monitoring; (i) anxiety, annoyance and nuisance, and (j) the continued risk to their Private Information, which remains in Defendants' possession, and which is subject to further breaches, so long as Defendant fails to undertake appropriate and adequate measures to protect Plaintiffs' and Class Members' Private Information.

150.    Plaintiffs and Class Members are entitled to compensatory, consequential, and nominal damages suffered as a result of the Data Breach.

151.    Plaintiffs and Class Members are also entitled to injunctive relief requiring Defendant to, e.g., (i) strengthen their data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) immediately provide adequate credit monitoring to all Class Members.

## EIGHTH CAUSE OF ACTION

## BREACH OF CONFIDENCE

**(Brought on Behalf of the Nationwide Class against PSC and on Behalf of the Philips**

**Subclass Against Philips)**

152.    Plaintiffs reallege and incorporate by reference preceding paragraphs 1 through 50 as if fully set forth herein, including the Plaintiffs' Omnibus Set of Additional Pleading Facts (ECF No. 908).

153.    Plaintiffs and Class Members have an interest, both equitable and legal, in Private Information conveyed to, collected by, and maintained by Defendants and ultimately accessed or compromised in the Data Breach.

154.    Defendants have a special relationship with those whose Private Information they maintain, like Plaintiffs and the Class Members.

155.    Because of that special relationship, Defendants were provided with and stored sensitive and valuable Private information related to Plaintiffs and the Class, which they were required to maintain in confidence.

156.    Plaintiffs and the Class provided Defendants with their Private Information under implied agreement of Defendants to limit the use and disclosure of such Private Information.

157.    Defendants owed a duty to Plaintiffs and Class Members to exercise the utmost care in obtaining, retaining, securing, safeguarding, deleting, and protecting the Private Information in their possession from being compromised, lost, stolen, accessed by, misused by, or disclosed to unauthorized persons.

158.    Defendants had an obligation to maintain the confidentiality of Plaintiffs' and the Class Members' Private Information. Plaintiffs and Class Members have a privacy interest in their personal medical matters, and Defendants had a duty not to disclose confidential Private Information.

159.    As a result of the parties' relationship, Defendants had possession and knowledge of confidential Private Information of Plaintiffs and Class Members.

160.    Plaintiffs' and the Class's Private Information is not generally known to the public and is confidential by nature.

161.    Plaintiffs and Class Members did not consent to nor authorize Defendants to release or disclose their Private Information to an unknown criminal actor.

162.    Defendants breached the duties of confidence they owed to Plaintiffs and Class Members when Plaintiffs' and the Class's Private Information was disclosed to unknown criminal hackers.

163.    Defendants breached their duties of confidence by failing to safeguard Plaintiffs' and Class Members' Private Information, including by, among other things: (a) mismanaging its system and failing to identify reasonably foreseeable internal and external risks to the security, confidentiality, and integrity of customer information that resulted in the unauthorized access and compromise of Private Information; (b) mishandling its data security by failing to assess the sufficiency of its safeguards in place to control these risks; (c) failing to design and implement information safeguards to control these risks; (d) failing to adequately test and monitor the effectiveness of the safeguards' key controls, systems, and procedures; (e) failing to evaluate and adjust its information security program in light of the circumstances alleged herein; (f) failing to detect the breach at the time it began or within a reasonable time thereafter; (g) failing to follow its own privacy policies and practices; (h) storing Private Information in an unencrypted and vulnerable manner, allowing its disclosure to hackers; and (i) making an unauthorized and unjustified disclosure and release of Plaintiffs and the Class Members' Private Information to a criminal third party.

164.    But for Defendants' wrongful breach of their duty of confidences owed to Plaintiffs and Class Members, their privacy, confidences, and Private Information would not have been compromised.

165.    As a direct and proximate result of Defendants' breach of Plaintiffs' and the Class's confidences, Plaintiffs and Class Members have suffered injuries, including: (i) Loss of their privacy and confidentiality in their Private Information; (ii) Costs associated with the detection and prevention of identity theft and unauthorized use of their Private Information; (iii) Costs associated with time spent and the loss of productivity from taking time to address and attempt to ameliorate, mitigate, and deal with the actual and future consequences of the Data Breach; (iv) Damages to the value of their Private Information entrusted, directly or indirectly, to Defendants with the mutual understanding that Defendants would safeguard Plaintiffs' and Class Members' data against theft and not allow access and misuse of their data by others; and (v) Mental anguish accompanying the loss of confidences and disclosure of their confidential and Private Information.

166.    As a direct and proximate result of Defendants' breach of their duty of confidences, Plaintiffs and Class Members are entitled to damages, including compensatory, punitive, and/or nominal damages, and/or disgorgement or restitution, in an amount to be proven at trial.

## PRAYER FOR RELIEF

Plaintiffs, individually and on behalf of the Class, respectfully request that the Court grant the following relief:

A.    Certify this case as a class action pursuant to Fed. R. Civ. P. 23, and appoint Plaintiffs as the Class Representatives and undersigned counsel as Class Counsel;

B.    Find in favor of Plaintiffs and the Class on all counts asserted herein;

C.      Award Plaintiffs and the Class monetary damages, including actual and statutory, compensatory damages, consequential, nominal, general, and punitive damages, to the maximum extent as allowed by law;

D.      Award restitution and all other forms of equitable monetary relief;

E.      Award equitable relief enjoining Defendants from engaging in the wrongful conduct complained of herein regarding the misuse or disclosure of the Private Information of Plaintiffs and Class Members, and from refusing to issue prompt, complete, and accurate disclosure to Plaintiffs and Class Members;

F.      Award injunctive relief as permitted by law or equity to assure that Class Members have an effective remedy, and to protect the interests of Plaintiffs and Class Members, including but not limited to an order:

   i.      requiring Defendants to protect, including through encryption, all data collected through the course of their business in accordance with all applicable regulations, industry standards, and federal, state, or local laws;

   ii.      requiring Defendants to delete, destroy, and purge the personal identifying information of Plaintiffs and Class Members unless Defendants can provide to the Court reasonable justification for the retention and use of such information when weighed against the privacy interests of Plaintiffs and Class Members;

   iii.      requiring Defendants to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of the Private Information of Plaintiffs and Class Members;

   iv.      prohibiting Defendants from maintaining the Private Information of Plaintiffs and Class Members on a cloud-based database;

v.        requiring Defendants to engage independent third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendants' systems on a periodic basis, and ordering Defendants to promptly correct any problems or issues detected by such third-party security auditors;

vi.       requiring Defendants to engage independent third-party security auditors and internal personnel to run automated security monitoring;

vii.      requiring Defendants to audit, test, and train their security personnel regarding any new or modified procedures;

viii.     requiring Defendants to segment data by, among other things, creating firewalls and access controls so that if one area of Defendants' network is compromised, hackers cannot gain access to other portions of Defendants' systems;

ix.       requiring Defendants to conduct regular database scanning and securing checks;

x.        requiring Defendants to establish an information security training program that includes at least annual information security training for all employees, with additional training to be provided as appropriate;

xi.       requiring Defendants to routinely and continually conduct internal training and education, and on an annual basis to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach;

xii.      requiring Defendants to implement a system of tests to assess its respective employees' knowledge of the education programs discussed in the preceding subparagraphs, as

well as randomly and periodically testing employees' compliance with Defendants' policies, programs, and systems for protecting personal identifying information;

        xiii.      requiring Defendants to implement, maintain, regularly review, and revise as necessary a threat management program designed to appropriately monitor Defendants' information networks for threats, both internal and external, and assess whether monitoring tools are appropriately configured, tested, and updated;

        xiv.      requiring Defendants to meaningfully educate all Class Members about the threats that they face as a result of the loss of their confidential personal identifying information to third parties, as well as the steps affected individuals must take to protect themselves;

        xv.      requiring Defendants to implement logging and monitoring programs sufficient to track traffic to and from Defendants' servers;

        xvi.      requiring, for a period of 10 years, the appointment of a qualified and independent third-party assessor to conduct a SOC 2 Type 2 attestation on an annual basis to evaluate Defendants' compliance with the terms of the Court's final judgment, to provide such report to the Court and to counsel for the Class, and to report any deficiencies with compliance of the Court's final judgment;

        xvii.      requiring Defendants to implement multi-factor authentication requirements, if not already implemented;

        xviii.      requiring Defendants' employees to change their passwords on a timely and regular basis, consistent with best practices.

        G.      Award disgorgement and restitution of all earnings, profits, compensation, and benefits received by Defendants as a result of their unlawful acts;

H.      Award a mandatory injunction requiring that Defendants provide notice to each member of the Class relating to the full nature and extent of the Data Breach and the disclosure of Private Information to unauthorized persons.

I.      Order Defendants to purchase or provide funds for lifetime credit monitoring and identify theft insurance to Plaintiffs and Class Members;

J.      Order Defendants to pay the costs in notifying Class Members about the judgment and administering the claims process.

K.      Award Plaintiffs and the Class pre-judgment and post-judgment interest to the maximum extent allowed by law;

L.      Grant Plaintiffs and the Class leave to amend this complaint to conform to the evidence produced at trial;

M.      Award Plaintiffs and the Class reasonable attorneys' fees, costs, and expenses, as allowable;

N.      Distribute any monies recovered on behalf of Class Members or the general public via fluid recovery or cy pres recovery where necessary and as applicable to prevent Defendants from retaining benefits of their wrongful conduct;

O.      Award Plaintiffs and the Class such other favorable relief as allowable under law or at equity; and

P.      Award such other and further relief as may be just and proper.

### JURY TRIAL DEMANDED

Plaintiffs hereby demand a trial by jury on all issues so triable.


Dated: June 21, 2024                                Respectfully submitted,

Kristen A. Johnson (BBO# 667261)
HAGENS BERMAN SOBOL SHAPIRO
LLP
1 Faneuil Hall Square, 5th Fl.
Boston, MA 02109
Tel: (617) 482-3700
Fax: (617) 482-3003
kristenj@hbsslaw.com

*Plaintiffs' Liaison & Coordinating Counsel*


E. Michelle Drake
BERGER MONTAGUE, PC
1229 Tyler St., NE, Ste. 205
Minneapolis, MN 55413
Tel: (612) 594-5933
Fax: (612) 584-4470
emdrake@bm.net

Gary F. Lynch
LYNCH CARPENTER, LLP
1133 Penn Ave., 5th Fl.
Pittsburgh, PA 15222
Tel: (412) 322-9243
Fax: (412) 231-0246
Gary@lcllp.com

Douglas J. McNamara
COHEN MILSTEIN SELLERS & TOLL
PLLC
1100 New York Ave. NW, 5th Fl.
Washington, DC  20005
Tel: (202) 408-4600
dmcnamara@cohenmilstein.com

Karen H. Riebel
LOCKRIDGE GRINDAL NAUEN PLLP
100 Washington Ave. S., Ste. 2200
Minneapolis, MN  55401
Tel: (612) 339-6900
Fax: (612) 612-339-0981
khriebel@locklaw.com

Charles E. Schaffer
LEVIN SEDRAN & BERMAN LLP
510 Walnut Street, Ste. 500
Philadelphia, PA  19106
Tel: (215) 592-1500
Fax: (215) 592-4663
cshaffer@lfsblaw.com

*Plaintiffs' Lead Counsel*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that, on this date, the foregoing document was served by filing it on the Court's CM/ECF system, which will automatically send a notification of such filing to all counsel of record via electronic mail.


Dated: June 21, 2024                          *<u>/s/ Kristen A. Johnson</u>*
                                              Kristen A. Johnson